# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| BRENDA KAY LASH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:17-CV-359-TLS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER OF THE | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Brenda Lash seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security Disability benefits and that the ALJ erred by failing to account for all of her impairments, both severe and non-severe in determining her residual functional capacity; failing to account for limitations regarding concentration, persistence, and pace; improperly making psychological judgments contrary to those of medical professionals; and overemphasizing her daily living activities.

## BACKGROUND

On March 10, 2011, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on April 23, 2008. (R. 18, ECF No. 6.) Her claim was denied initially on June 12, 2014, and upon reconsideration on August 27, 2014. (*Id.*) On December 23, 2015, the Plaintiff appeared with counsel and testified at a hearing before

an administrative law judge. (*Id.*) Dale A. Thomas, an impartial vocational expert, and two other witnesses also appeared and testified at the hearing. (*Id.*) On February 9, 2016, the ALJ denied the Plaintiff's application. (R. 33.) On June 22, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.) On August 21, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since her alleged onset date, April 23, 2008, through her date last insured, September 30, 2013. (R. 20.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including degenerative disc disease of the lumbar

2

spine; status post-lumbar fusion with discectomy; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; carpal tunnel syndrome; and obesity. (*Id.*) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (R. 21.) The ALJ also found that the Plaintiff had multiple non-severe impairments, including rhinitis, headaches, urinary stress incontinence, and arthritis. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ found that the Plaintiff had a mild restriction in activities of daily living, moderate difficulties with social functioning, and moderate difficulties with regard to concentration, persistence, and pace. (R. 22–23.) However, the ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that:

> [T]he claimant could occasionally operate foot controls bilaterally, she could occasionally balance, stoop, kneel, crouch, and crawl, she could occasionally climb ramps and stairs, she could never climb ladders, ropes, and scaffolds, she should have avoided concentrated exposure to wet, slippery surfaces, dangerous moving

3

>machinery, and unprotected heights, and she could frequently handle, finger and feel bilaterally. The claimant could understand, remember, and carry out simple instructions without fast-paced production requirements, with few, if any, changes in the workplace. The claimant could make judgments on simple work-related decisions, she could tolerate occasional interactions with supervisors, coworkers, and the general public, and she could tolerate usual work situations.

(R. 24.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms." (R. 26.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms "were not entirely credible." (*Id.*)

In her function report completed May 27, 2014, the Plaintiff claimed that she had "difficulty walking more than halfway to the mailbox, lifting, squatting, bending, standing, reaching, sitting, kneeling, talking, climbing stairs, memorizing, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others." (R. 25.) In December 2014, the Plaintiff submitted a statement that "she could walk one hundred feet, stand five to ten minutes, sit ten to fifteen minutes, lift less than three pounds, and could not push, pull, bend, or stoop" and she had "a poor ability to pay attention, as well as bad nerves due to depression." (*Id.*) During the hearing before the ALJ, the Plaintiff testified that she has limited ability to grip or lift items, has memory problems and is confused easily, can sit for fifteen minutes, stand for ten minutes, walk for six minutes, and has trouble concentrating or focusing on things. (*Id.*)

The Plaintiff's husband submitted a third-party function report in which he stated that the Plaintiff "had difficulty lifting, walking more than thirty feet, squatting, bending, standing,

reaching, sitting, kneeling, climbing stairs, memorizing, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others." (*Id.*) In a subsequent statement, he stated that the Plaintiff had "bad anxiety and depression, and could not lift more than five pounds." (*Id.*) The Plaintiff's friend stated that the Plaintiff "had problems with concentration, focus, and memory loss, as well as lifting, bending, or standing for long periods." (*Id.*) The Plaintiff's mother stated that the Plaintiff "could not lift, lean over, pick things up, or perform other basic activities" and that "she could not understand basic instructions." (*Id.*) The Plaintiff's daughter stated the Plaintiff had difficulty standing, walking, or bending for long periods, difficulty with concentration and anxiety, and "little ability to perform any basic activity . . . ." (R. 25–26.)

The ALJ turned first to the objective medical evidence and found that "[t]he medical evidence of record does not support the alleged extent of the claimant's symptoms." (R. 26–28.) Specific to the Plaintiff's mental limitations, the ALJ noted inconsistencies in the Plaintiff's reports to different evaluators. (R. 29.) The ALJ also stated that "the claimant's ability to maintain social relationships, and to attend church and shop regularly, indicates her allegations of social anxiety and inability to get along with others does not suggest significant [limitations] in social functioning." (*Id.*) The ALJ found that "the claimant's cooperation during examinations also does not support her allegations of stress and difficulty dealing with others." (*Id.*) The ALJ also found that the limitations related to concentration, persistence, and pace were "consistent with the claimant's stated ability to go to church, and to maintain important social relationships with her family and friends, while considering her fluctuating mood during her mental health treatment records." (*Id.*)

The ALJ then reviewed the weight given to various medical sources of information and described the reasoning behind the weight assigned. (R. 29–31.) The ALJ gave "little weight to the statements and testimony of the claimant's spouse, daughter, mother, and friend" because they were "inconsistent with the medical evidence of record," and because they "define[d] limitations and symptoms inconsistent with the claimant's stated abilities, particularly in social functioning." (R. 31)

The Plaintiff has past relevant work as a dental assistant, which is light, skilled work, performed at the medium level. (R. 31.) The ALJ found that the Plaintiff is unable to perform past relevant work. (*Id.*) Relying on the VE's testimony, the ALJ determined that "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (R. 32.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 33.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**ANALYSIS**

The Plaintiff argues that the ALJ erred by overemphasizing the Plaintiff's daily living activities; failing to incorporate all of her medically determinable impairments into her RFC, both severe and non-severe; and failing to account for limitations in concentration, persistence, and pace; and improperly "playing doctor."

**A.     Daily Living Activities**

The Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). The Commissioner correctly notes that an individual's daily activities are among the factors that an ALJ must consider in making such a determination. *See Craft*, 539 F.3d at 660.

Courts have repeatedly found fault with decisions where an ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities or the claimant's need for assistance or modifications. *See, e.g.*, *Sneed v. Berryhill*, No. 2:16-CV-195, 2017 WL 4325303, at *3 (N.D. Ind. Sept. 29, 2017) ("If the ALJ wishes to hold Plaintiff's daily activities against her, he must . . . discredit Plaintiff's claims of how much her children help with the activities."); *Herrold v. Colvin*, No. 2:13-CV-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) ("[T]he Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores.") (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th

Cir. 2009)); *Blow v. Astrue*, No. 1:11-CV-293, 2012 WL 3233621, at *9 (N.D. Ind. Aug. 6, 2012) (finding improper reliance on daily activities when others performed almost all of the household chores and any activities the claimant could perform were at a slower pace with frequent breaks); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2007) (finding fault where the ALJ "fail[ed] to examine the physical effects coextensive with [the] performance" for daily activities and "failed to note or comment upon the fact that [the claimant] receive[d] assistance for many everyday activities and even personal care from her children").

Here, it appears that the ALJ did not adequately take into account the modifications and assistance that the Plaintiff required to perform the cited daily living activities. The ALJ does not take the Plaintiff's daily living activities into account determining her RFC and mentions them only in determining whether the Plaintiff's mental impairments constitute severe impairments within the meaning of the statute. The ALJ acknowledged the Plaintiff's claims regarding specific limitations, such as the ability to sit for only fifteen minutes or stand for only ten minutes, but did not discuss her ability to perform daily living activities in step four. Instead, the ALJ found that "the claimant's medical records do not support the degree and frequency of her alleged symptoms."

However, the ALJ did discuss the Plaintiff's daily living activities at step three of the analysis. The Court will consider whether the ALJ's reasoning in step three is sufficient to support her conclusions in step four. In her step three analysis, the ALJ noted that the Plaintiff had difficulty with her personal care due to physical pain, could no longer make complex meals, could no longer perform outdoor work, but could work on laundry. (R. 22–23.) The Plaintiff's daughter testified that the Plaintiff had difficulty with washing and cooking due to pain. (R. 23.) The ALJ acknowledged the Plaintiff's reports of anxiety, depression, fear of other people, and

inability to handle stress. (*Id.*) However, the ALJ discounted these reports because the Plaintiff "lives with her husband[;] . . . regularly interacts with her daughter, mother, and friend[;] . . . [and] could shop when she had to, drive[] short distances, and attend[] church on a weekly basis." (R. 23.) Thus, the ALJ concluded that the Plaintiff's "ability to go in public on a regular basis, including church, a communal activity, demonstrates some ability to get along with others." (*Id.*) The ALJ also found that the Plaintiff's ability to pay bills and count change demonstrated an ability to focus on tasks and noted that some medical records indicated that her memory was intact.

The Court finds that the ALJ's discussion in step three is insufficient to draw a logical bridge from the evidence to her conclusions regarding the Plaintiff's RFC, and the Court is unable to meaningfully review whether the ALJ overly relied on the Plaintiff's daily living activities in concluding that the Plaintiff is capable of full-time employment. First, the ALJ's reasoning was in the context of whether the Plaintiff's mental impairments caused marked restriction in the Plaintiff's daily living activities, social function, and concentration, persistence, and pace. In this respect, the ALJ found specifically that the Plaintiff's limitations in her activities of daily living were due to her physical pain, not her mental impairments. (R. 23.) The ALJ did not discuss how the Plaintiff's limitations in her daily activities due to pain were inconsistent with her stated inability to work and therefore did not build a logical bridge. Thus, the Court must remand this case.

The Court is also not convinced that the ALJ appropriately considered the help and modifications that the Plaintiff requires to perform daily living activities to the extent that the ALJ did take the Plaintiff's daily living activities into account at step four. The ALJ acknowledged that the Plaintiff requires help with personal care and can prepare only simple

meals. (R. 22.) The ALJ also stated that the Plaintiff can work on laundry, albeit with difficulty, can drive, and can go in public on a regular basis. (*Id.*) But the Plaintiff's husband testified that the Plaintiff was unable to get laundry out of the washer and that he had to help her. (R. 97–98.) The Plaintiff testified that she could drive if she "had to," rather than on a consistent basis as the ALJ's reasoning suggests, because she did not feel it was safe due to her medications and poor memory. (R. 86–87). Finally, the ALJ seems to rely heavily on the fact that the Plaintiff goes to church as evidence of her "ability to go in public on a regular basis." The Court has found no authority that holds that church attendance is an inappropriate consideration. A person may feel a conviction to attend religious services despite pain or anxiety, and the ALJ never inquired into this activity. The ALJ does not draw a logical bridge from the facts that the Plaintiff can shop when she "has to," attend church once a week show only a limited ability to interact with the public, and maintain relationships with four people (who assist the Plaintiff with her daily living activities) to the conclusion that the Plaintiff is capable of sufficient social interaction to hold a full-time job. Therefore, on remand, the Court encourages the ALJ to fully consider the modifications and assistance that the Plaintiff requires to perform daily living activities and articulate her reasoning.

**B.      Subjective Testimony**

The Court is also unable to meaningfully review the ALJ's opinion for a second reason: the ALJ discounted the Plaintiff's subjective complaints because "[t]he medical evidence of record does not support the alleged extent of the claimant's symptoms." (R. 26.) The ALJ discounted the testimony and reports of four third-parties because they were "inconsistent with the medical evidence of record and the opinions of the State agency medical consultants" and

"define[d] limitations and symptoms inconsistent with the claimant's stated abilities, particularly in social functioning." (R. 31.) First, the ALJ does not articulate what limitations or symptoms that the third-parties described were inconsistent with the Plaintiff's testimony, and, more importantly, the ALJ relies only on the medical record and Stage agency medical consultants' opinions to discount the credibility of the third-party testimony and reports. But, the Seventh Circuit, and this District, have rejected this approach. *See, e.g.*, *Villano v. Astrue*, 556, F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."); *Myles v. Astrue*, 585 F.3d 672, 677 (7th Cir. 2009) (same); *see also Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) (same); *Thomas v. Colvin*, 534 F. App'x 546, 552 (7th Cir. 2013) (same); *Boyd v. Barnhart*, 175 F. App'x 47, 50 (7th Cir. 2006) (reversing and remanding for insufficient credibility determination where the Commissioner "defended the ALJ's decision by relying on the objective medical evidence, the testimony of the vocational expert, and a brief discussion of [the claimant's] daily living activities"); *Salaiz*, 202 F. Supp. 3d at 893–94 ("The ALJ erred when assessing the Plaintiff's credibility because she relied entirely on medical evidence . . . ."); *Vercel v. Colvin*, No. 2:15-CV-71, 2016 WL 1178529, at *4 (N.D. Ind. Mar. 28, 2016) (Although the "ALJ is not required to give full credit to every statement of pain made by the claimant . . . a claimant's statements regarding symptoms or the effect of symptoms on his ability to work 'may not be disregarded solely because they are not substantiated by objective evidence.'") (quoting SSR 96-7p, 1996 WL 374186, at *6 (Jul. 2, 1996)).

In fact, "the whole point of the credibility determination is to determine whether the claimant's allegations are credible *despite* the fact that they are not substantiated by the objective medical records." *Stephens v. Colvin*, No. 1:13-CV-66, 2014 WL 1047817, at *9 (N.D. Ind. Mar.

18, 2014) (emphasis in original); *see also Thomas*, 534 F. App'x at 551 (The ALJ's argument "that [the claimant's] alleged daily activities 'cannot be objectively verified with any reasonable degree of certainty' [] ignores the fact that [the claimant's] daughter (who forced [the claimant] to move in with her so that she could provide care) confirmed the type and extent of [the claimant's] daily activities.").

The Court acknowledges that it may not overturn the ALJ's credibility determination unless it is "patently wrong." *See Elder*, 529 F.3d at 413–14. "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, when the ALJ's credibility determination "rest[s] on objective factors . . . rather than subjective considerations [such as a witness's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (quoting *Heron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994) (brackets in original)). Such is the case here. Because there is no indication that the ALJ took such subjective considerations into account, the Court is unable to meaningfully review the ALJ's decision.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order. Because the Court is remanding on these issues, the Court need not consider the remainder of the parties' arguments.

SO ORDERED on May 31, 2018.

     s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT